# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––

### No. ACM S32575

––––––––––––––

### UNITED STATES
*Appellee*

v.

### Austin L. WILSON
Airman (E-2), U.S. Air Force, *Appellant*

––––––––––––––

Appeal from the United States Air Force Trial Judiciary

Decided 9 September 2020

––––––––––––––

*Military Judge:* Rebecca E. Schmidt.

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, forfeiture of $819.00 pay per month for four months, and reduction to E-1. Sentence adjudged 19 December 2018 by SpCM convened at Edwards Air Force Base, California.

*For Appellant:* Major Benjamin H. DeYoung, USAF; Major Yolanda D. Miller, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Sarah L. Mottern, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Judge KEY delivered the opinion of the court, in which Senior Judge MINK and Judge ANNEXSTAD joined.

––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

––––––––––––––

KEY, Judge:

A special court-martial convicted Appellant, pursuant to his pleas, of four specifications of wrongful use of controlled substances and three specifica-

tions of wrongful distribution of controlled substances, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] Officer members sentenced Appellant to a bad-conduct discharge, confinement for four months, forfeiture of $819.00 pay per month for four months, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged, but granted credit in the amount of 16 days of confinement, $125.00 of pay forfeiture per month for four months, and a one-grade reduction based upon Appellant having been previously punished for some of the charged offenses.[2]

This case was originally submitted to us on its merits; we specified an issue for the parties to address: whether Appellant's sentence should be set aside based upon trial counsel arguing facts not in evidence. While we find error, we conclude no substantial right of Appellant was materially prejudiced, and we affirm the findings and sentence.

## I. BACKGROUND

In March 2018, a sample of Appellant's urine—which he provided as part of a unit-wide inspection—tested positive for metabolites of marijuana. Pursuant to installation policy, Appellant was tested two more times, testing positive for marijuana use both times. Appellant told Security Forces investigators he used not only marijuana, but also 3,4-methylenedioxymethamphetamine (MDMA, or "ecstasy"), and lysergic acid diethylamide (LSD). Over the next six months, Appellant tested positive for marijuana use three more times. He was ultimately charged with, and pleaded guilty to, using and distributing marijuana on divers occasions,[3] using MDMA on divers occasions and distributing it once; and using LSD on divers occasions and distributing it once.

During the providence inquiry, Appellant explained he used LSD and ecstasy "approximately five to six times" each at music festivals after purchasing the drugs from an unnamed individual. He said that on one occasion, he gave three ecstasy pills to his roommate, Senior Airman (SrA) DL, receiving nothing in exchange. Appellant said he provided two pills to another person's

---

[1] All references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] *See United States v. Pierce*, 27 M.J. 367, 368–69 (C.M.A. 1989).

[3] Appellant was charged with two different specifications alleging marijuana use; each specification covered a different discrete time period.

girlfriend on another occasion, but no detail was elicited about this event. With respect to distributing LSD, Appellant said he gave two tabs laced with the drug to Airman (Amn) ER, receiving $30.00 in exchange. Appellant said he distributed a third tab to another individual, but provided no further information about that distribution.[4]

Appellant further explained he used marijuana, which he bought from an individual advertising the drugs online, "more than a couple dozen times" during the first charged timeframe—a period of about six months—and "five to six times" in the second timeframe—a period of less than a month. He said he distributed "a gram or so" of the marijuana "three to four times" to SrA DW. Recounting the first time he distributed marijuana, Appellant explained SrA DW came over to Appellant's off-base house and Appellant told him he "could help him out with his depression," and they decided to smoke marijuana out of a bong. Appellant put marijuana into the bong, showed SrA DW how to use the bong, then passed it to SrA DW. It was such passing of marijuana to SrA DW that constituted Appellant's charged distribution of the drug.

After the military judge found Appellant guilty, the Government called one of the agents involved with the investigation to testify. The agent said Appellant had provided the names of "some military and some civilian" people Appellant had used drugs with, "at least two or three" the Air Force Office of Special Investigations (AFOSI) had not known about at the time. The agent said he forwarded those names to other AFOSI detachments, but there was no evidence offered as to what, if anything, became of those leads.

Amn (formerly SrA) DW was called by the Government and testified he used marijuana with Appellant "[a]bout half a dozen" times and that Appellant always provided the marijuana. Amn DW took the stand wearing shackles, which neither the Defense nor the military judge anticipated, and near the end of the assistant trial counsel's direct examination, she said, "Now, we see you are in shackles. Do you want to tell us—." Her question was cut short by a defense objection. After hearing the parties' positions, the military judge advised the members,

> [T]he trial counsel had inquired whether the witness was wearing shackles. I have sustained an objection to that question. As I indicated at the outset, this means that you are to disregard both the question and the answer. You are also to please disre-

---

[4] The military judge did not inquire about the second distribution, pointing out that the Government had charged Appellant with only a single instance of distribution.

gard the fact that this witness is wearing shackles. You are not
to speculate as to the reasons. It is of no relevance whatsoever,
and you are to completely disregard it.

Appellant's squadron commander also testified for the Government about
the manning in the squadron. She explained that Appellant had attained a
"5-level" training status, and that losing a 5-level Airman has a "pretty signif-
icant" impact on the unit's mission, although she did not indicate whether
she was specifically referring to losing Appellant or just losing 5-level Airmen
in general.

In his unsworn statement to the members, Appellant detailed his strug-
gles with mental illness and substance abuse as well as his success in attain-
ing and maintaining sobriety in the two months preceding his trial. He told
the members that he had been diagnosed as bipolar during his substance-
abuse treatment and was prescribed medication for the disorder and that, as
a result, his "mind and body have never been in a better place."

Assistant trial counsel gave the sentencing argument for the Government,
asking the members to sentence Appellant not just for his misconduct, but for
the impact he had on other Airmen, despite the dearth of evidence of any
such impact. Assistant trial counsel began her argument by saying Appellant
made reckless criminal decisions, but she quickly turned her focus to the oth-
er Airmen, saying: "But even worse than that, [Appellant] recklessly jeopard-
ized the future careers of his fellow wingman, [sic] people who considered him
a friend . . . ." She continued by telling the members Appellant had "openly
encouraged these wingmen to engage in criminal activity and facilitated the
destruction of their careers." She came back to this career-destruction theme
a page later in her eight-page argument, saying that Appellant "showed [oth-
er Airmen] how to use marijuana. He showed them how to use LSD. He facili-
tated the destruction of their careers." Two pages later she told the members
Appellant's conduct "cost both his unit and his fellow [A]irmen substantially."
Further developing this theme, assistant trial counsel argued,

> Now let's think about these young [A]irmen for a few minutes
> here. These are young [A]irmen who have worked hard to begin
> their careers in the Air Force, who are oftentimes away from
> home from their families for the first time, [A]irmen who are
> trying to do the right things but who are taught to rely and
> trust in one another, [A]irmen who considered [Appellant] a
> friend. But [Appellant] used his influence to place these
> [A]irmen's future in peril and abused his position of trust. His
> actions facilitated the destruction of these careers—these Air
> Force careers and their future career opportunities.

On the seventh page of her argument, assistant trial counsel said Appellant "even taught some of these Airmen how to use marijuana and how to use LSD," describing the Airmen as "our most prized and valued resource." At the very end of her argument, assistant trial counsel returned once again to the theme she had established at the outset, telling the members that Appellant "recklessly destroyed his future career and in the commission of these crimes, he destroyed the careers of fellow [A]irmen and there is no justice if there is no punishment and this punishment should be as serious as the multiple crimes he has committed."

Trial defense counsel did not aggressively rebut assistant trial counsel's assertion that Appellant had destroyed others' careers, but he did note that Appellant's drug use was "a victimless crime" and said, "trial counsel wanted to make a statement he sabotage [sic] people's careers and lives but you're going to get a chance to actually listen to the inquiry and you heard from [Amn DW]." Trial defense counsel characterized assistant trial counsel's claim that Appellant taught others how to use drugs as "an exaggeration. It's handing somebody a joint that's pre-lit. It's not teaching somebody how to use drugs."

## II. LAW

Whether or not argument is improper is a question of law we review de novo. *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011) (citation omitted). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Trial counsel commits error by making arguments that "unduly . . . inflame the passions or prejudices of the court members." *Marsh*, 70 M.J. at 106 (internal quotation marks and citation omitted). With respect to sentencing arguments, we must be confident an appellant "was sentenced on the basis of the evidence alone." *Frey*, 73 M.J. at 248 (quoting *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013)). In assessing the impact of improper sentencing argument on an appellant's substantial rights and the integrity of his or her trial, we consider: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Id.* at 249 (quoting *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)).

In presenting argument, trial counsel may "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Baer*, 53 M.J. at 237 (citation omitted). In determining whether trial counsel's comments were fair, we examine them in the context of the entire court-

martial, and we do not "surgically carve out a portion of the argument with no regard to its context." *Id.* at 238 (internal quotation marks omitted).

In the absence of defense objection to trial counsel's argument, we review for plain error. *Halpin*, 71 M.J. at 479 (citation omitted). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Andrews*, 77 M.J. 393, 401 (C.A.A.F. 2018) (quoting *Fletcher*, 62 M.J. at 179).

## III. DISCUSSION

Appellant argues his sentence should be reassessed and reduced, or alternatively set aside, based on assistant trial counsel's sentencing argument referring to matters not in evidence, such as the impact of his misconduct on other military members' careers.

We agree assistant trial counsel erred in her sentencing argument by repeatedly asserting Appellant had "facilitated the destruction of" and "destroyed" the careers and "future career opportunities" of other Airmen, as those claims were wholly unsupported by the evidence at trial. In his providence inquiry, Appellant said he gave three pills of ecstasy to SrA DL on one occasion and two tabs of LSD to Amn ER on another. Appellant smoked marijuana with Amn DW approximately six times and showed Amn DW how to use a bong the first time they smoked together. Neither SrA DL nor Amn ER was called to testify at Appellant's court-martial, and no evidence was introduced explaining what—if anything—happened to them or their careers. Amn DW did testify, and he apparently did so while he was in confinement based upon the fact he was called to the stand in shackles.[5] Not only was no evidence offered about Amn DW's career or his future prospects, the military judge expressly told the members to disregard the fact he was wearing shackles, not to speculate why he was wearing shackles, and to "completely disregard" the fact he was wearing them, as it was "of no relevance whatsoever."

---

[5] We have—and, by extension, the members on Appellant's court-martial had—no way of knowing if Amn DW was being held in pretrial confinement or if he was serving post-trial confinement, much less whether such confinement was in any way related to Appellant's offenses. Taking together Appellant's statements in his providence inquiry with the grade Amn DW wore while testifying, it is clear Amn DW had been reduced in grade at some point, but no evidence was introduced about the reduction.

Assistant trial counsel did not simply make a passing reference to the careers of other Airmen, whom she described as "our most prized and valued resource;" she explicitly accused Appellant of playing a direct role in, if not being squarely responsible for, destroying their careers. In an argument that spanned just eight pages, assistant trial counsel accused Appellant of jeopardizing or facilitating the destruction of the careers of other Airmen five times. She invited the members to "think about these young [A]irmen for a few minutes" and then characterized them as young hard-working recruits "oftentimes away from home from their families for the first time," who were "trying to do the right things," and who viewed Appellant as their friend. Her career-destruction theme was woven throughout her sentencing argument, and was the last thing she argued to the members before asking them to sentence Appellant to a bad-conduct discharge, seven months of confinement, reduction to the grade of E-1, and forfeiture of two-thirds pay for seven months.[6]

We see nothing inherently problematic in such a career-destruction theme, so long as there is some evidence in the record to support it. In Appellant's case, there was not. The design of assistant trial counsel's argument was to make the impact of Appellant's offenses larger than his actual misconduct by portraying him as being instrumental in—if not the sole cause of—the derailment of the military futures of some number of otherwise-valuable junior Air Force members. Trial counsel may argue any reasonable inferences which fairly arise from the evidence, but a plain prerequisite is having evidence from which to draw those inferences. In Appellant's case, the parties had scant evidence about the other Airmen to work with. At the very most, the evidence showed SrA DL received three ecstasy pills from Appellant and Amn ER received two tabs of LSD from him. We do not know whether these Airmen were already prolific users who asked Appellant to acquire the drugs for them on isolated occasions, whether Appellant encouraged them to use drugs, or whether they were confidential informants working with law enforcement. There is no evidence the Airmen consumed the drugs they received from Appellant, and there is no evidence of what—if any—action was taken against them, career-ending or otherwise. As far as the record before us shows, the Airmen may very well still be serving their enlistments. While illicit drug use is not condoned by the military, and those members who are caught partaking in it are likely to face punitive or adverse administrative actions of some sort, the record is silent as to what did or did not happen to

---

[6] Assistant trial counsel's specific request regarding the forfeitures was: "two-thirds forfeiture of pay for the [seven] months while in confinement."

SrA DL and Amn ER. Appellant's conduct with respect to Amn DW was somewhat more detailed, revealing that Appellant consumed marijuana with him and showed him how to use a bong, but we still have no information about any impact to his career, much less that anything that did befall him was caused or contributed to by Appellant. Even though it was clear Amn DW had been reduced in grade at some point, there was no evidence explaining what led to that reduction or when it occurred.

Assistant trial counsel's career-destruction argument amounted to plain error, as her repeated references to facts not in evidence and unreasonable inferences drawn therefrom were both plain and obvious. Appellant is not entitled to relief, however, unless trial counsel's error resulted in prejudice—that is, it must have impacted a substantial right. In assessing prejudice, we turn to the three factors identified in *Halpin*: (1) severity of the error, (2) curative measures, and (3) weight of the evidence. 71 M.J. at 480 (citation omitted). The error in assistant trial counsel's argument was significant as it both exaggerated Appellant's culpability and was drawn from evidence never admitted in Appellant's trial. Moreover, the military judge had already instructed the members not to draw any inferences from the fact Amn DW testified in shackles. By virtue of this instruction—and trial defense counsel's objection which precipitated it—assistant trial counsel was aware that the consequences Amn DW, at least, had faced were inappropriate for the members to consider. Despite this awareness, assistant trial counsel argued to the members the exact sort of inference the military judge had instructed the members not to make. Because trial defense counsel never objected, no curative measures were taken during the argument. On the other hand, we recognize the lack of objection as "'some measure of the minimal impact' of a prosecutor's improper comment." *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)).

Although we find this case to be a close call, we are not convinced assistant trial counsel's improper argument warrants relief. Appellant's drug use was wide-ranging and continuous, even when faced with positive urinalysis results. There is no evidence of what became of the other Airmen in this case, but it is indisputable that Appellant involved three other military members in his drug use. Appellant also admitted to using various types of drugs on multiple occasions, further aggravating his misconduct. Importantly, the members sentenced Appellant to 4 months of confinement—significantly less than both the 12-month maximum he faced and the 7 months requested by assistant trial counsel. Appellant's sentence is commensurate with his offenses and is what would likely have been adjudged even in the absence of trial counsel's improper career-destruction argument. We are confident Appellant was sentenced based on the evidence in his case and solely on that evidence.

## IV. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.[7] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Aaron Jones*

AARON L. JONES
Deputy Clerk of the Court

---

[7] We note an additional error not raised by Appellant. The staff judge advocate's recommendation erroneously indicates the maximum imposable punishment included, *inter alia*, forfeiture of all pay and allowances for 12 months. As Appellant was tried by a special court-martial, he was subject to a maximum forfeiture of only two-thirds pay per month for 12 months. *See* R.C.M. 201(f)(2)(B)(i); *United States v. Waters*, No. ACM S32705, 2013 CCA LEXIS 879, at *2–3 (A.F. Ct. Crim. App. 18 Oct. 2013) (unpub. op.). However, Appellant has not asserted and we do not find a colorable showing of possible prejudice from the error under the facts of this case. *See United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000).